IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIA-GMI, LLC, a Florida Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL R. MICHENER, an individual, JAMES M. MCWALTERS, an individual, CHARLES D. TOY, an individual, ALLAN M. DUNN, an individual, LARRY J. AUSTIN, an individual, W. DENMAN VAN NESS, an individual, MICHAEL P. SALUCCI, an individual, COMPUTER AND SOFTWARE ENTERPRISES, INC., a California corporation, PANGAEA HOLDINGS, LLC, a dissolved Delaware limited liability company, and PANGAEA TRADING CORPORATION, a Delaware corporation<br><br>Defendants. | No. C 06-7949 SBA<br><br>**ORDER**<br><br>[Docket No. 21] |

This matter comes before the Court on Defendants' Motion to Dismiss Counts I, II and III of Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS Defendants' Motion to Dismiss [Docket No. 21].

## **BACKGROUND**

### **I.  The Loan**

In or about late December of 2003, Defendants Alan Dunn and Dan Michener approached Plaintiff GIA-GMI, LLC about the possibility of investing in Defendants' now-defunct business

venture, GMI Capital Corporation ("GMICC"). First Amended Complaint ( "FAC"), ¶ 26. GMICC was a new venture, whose business plan was to operate as a non-regulated private finance company that would provide loans to small-to-medium enterprise technology companies in emerging markets such as Thailand and Singapore. *Id.*, ¶ 17. The intended primary source of funds for GMICC to finance such loans was from the Overseas Private Investment Corporation, or "OPIC." *Id.*, ¶ 18. OPIC is a federal government corporation whose purpose is to mobilize and facilitate the participation of United States private capital and skills in the economic and social development of less developed countries and areas. *Id.*, ¶ 19.

Dunn and Michener gave Plaintiff a copy of a GMICC Confidential Private Placement Memorandum ("PPM") dated January 2004, which contained consolidated projected financial statements for GMICC and its subsidiaries. *Id.* ¶ 29, and Exh. B (the PPM). In making its investment, Plaintiff relied on the representations in the PPM. FAC, ¶ 122. Significantly, the PPM expressly warned that failure to obtain OPIC financing would render GMICC unable to execute its business plan. The PPM stated that "there [was] no assurance that GMICC would be successful in managing its relationship with OPIC, which would cause GMICC to "be unable to execute [its] business plan by obtaining low-cost debt…." FAC, Exh. B at 12.

In addition, the PPM warned Plaintiff that an investment in GMICC "involves a high degree of risk and investors must be prepared to withstand the loss of their entire investment." *Id.* The PPM also disclosed that GMICC was "a new company with no significant operating history," that it was "entering a market that is highly volatile," warned that the technology industry in which GMICC intended to invest was also volatile, and finally, stated "[t]here is no assurance of profit, appreciation, or liquidity". *Id.* at.12-13.

On February 6, 2004, Plaintiff agreed to lend GMICC a total of $750,000 pursuant to the terms of a convertible secured promissory note (the "Note"). FAC, Exh. D. Interest was payable on the Note at the rate of 10%, and it provided for a maturity date of December 1, 2004. *Id.* GMICC subsequently received loan proceeds totaling $750,000. FAC, ¶¶ 36-37. Plaintiff alleges it was induced to make the loan to GMICC based on Defendants' representations in the PPM and oral assurances that when GMICC

obtained the OPIC loan, it would have sufficient cash to repay the Note by the end of 2004. *Id.*, ¶¶ 28-30.

As of September 1, 2004, after having failed to obtain the hoped-for loan from OPIC, GMICC ran out of cash. FAC, ¶ 54. Subsequently, GMICC defaulted on the Note. Plaintiff brought suit on the Note in the U.S. District Court for the Middle District of Florida, obtaining a judgment thereon against GMICC on January 5, 2006, in the amount of $971,239.38. *Id.*, ¶ 43.

## II.     Plaintiff's Allegations

Plaintiff's Counts I, II and III are fraud-based claims for, respectively, 1) common law fraud, 2) violation of the Florida Securities Investor Protection Act, Fla. Stat. § 517.01 et seq., and 3) violation of Securities Exchange Act of 1934, Section 10(b) and Rule 10b-5. FAC, ¶¶ 117-138. Plaintiff's fraud claims are premised on the non-disclosure of an internal cash projection that Defendant Michener prepared and emailed to Defendant Dunn in January of 2004, which email Plaintiff obtained in post-judgment discovery in the Florida litigation. *Id.*, ¶ 123. The cash flow projections are attached to and incorporated in the FAC as Exhibit C. Plaintiff alleges that on January 19, 2004, Michener emailed to Dunn "some preliminary cash budgets" based on two scenarios, one with a $500,000 investment by Plaintiff and one with a $750,000 investment. *See* FAC, Exh. C at 1. These preliminary cash budgets were not provided to Plaintiff at the time it made the $750,000 loan to Defendants. FAC, ¶ 35.

Plaintiff alleges that the projections show that "even if GMICC received the OPIC loan, GMICC would not have sufficient funds to repay Plaintiff by the end of 2004 as promised" and thus, the projections constitute material true facts, that if known, would have revealed the falsity of both the representations in the PPM and Defendants' oral representations to Plaintiff that GMICC would have sufficient cash to repay the Note by the end of 2004 if OPIC funded the loan to GMICC. *Id.*, ¶ 33, 130 and 138.

## **LEGAL STANDARD**

Florida substantive law applies to Plaintiff's claims pursuant to a choice of law provision in the Note. *See* FAC, Exh. D at 4, Section E.2.

3

## I. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6) a claim may be dismissed if a plaintiff fails to allege any set of facts in support of the claim that would entitle him or her to relief. *Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007); *Hydrick v. Hunter*, 466 F.3d 676, 686 (9th Cir. 2006). When considering a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint is liberally construed and all well-pleaded facts are taken as true. *Kahle*, 474 F.3d at 667; *Syverson v. IBM Corp.*, 472 F.3d 1072, 1075 (9th Cir. 2007). However, conclusory allegations of law, unwarranted deductions of fact, or unreasonable inferences are insufficient to defeat a motion to dismiss. *See Fields v. Legacy Health Sys*., 413 F.3d 943, 950 n.5 (9th Cir. 2005); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint incorporates documents or alleges the contents of documents, and no party questions the authenticity of such documents, a court may also consider such documents when evaluating the merits of a Rule 12(b)(6) motion. *See In re Stac Electronics Sec. Lit.*, 89 F.3d 1399, 1405 (9th Cir. 1996).

## II. Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) provides as follows:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed. R. Civ. P. 9(b).

"[The Ninth Circuit] has interpreted Rule 9(b) to require that 'allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)). "The pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distributing*

4

*Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986) (citing *Semegen*, 780 F.2d at 731).

### III.     Pleading Requirements in Securities Fraud Actions

Section 10(b) of the Exchange Act makes it unlawful "for any person . . . to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]" 15 U.S.C. § 78j(b).

Rule 10b-5, promulgated under the authority of Section 10(b), in turn, provides that "[i]t shall be unlawful for any person . . . (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. Thus, the basic elements of a Rule 10b-5 claim are: (1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss. *In re Daou Systems, Inc.* 411 F.3d 1006, 1014 (9th Cir. 2005).

In order to survive a motion to dismiss, a Section 10(b) claim must satisfy three pleading standards. First, it must meet the general requirements established by Federal Rule of Civil Procedure 8(a) that complaints give a short and plain statement of the claim. Second, it must conform with the particularity requirements of Rule 9(b). *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quoting *Semegen*, 780 F.2d at 731). Third, it must satisfy the requirements of the Private Securities Litigation Reform Act ("PSLRA").

The PSLRA employs heightened pleading standards for claims brought under Section 10(b) and, similar to Rule 9(b), requires pleading with particularity for two elements in a Section 10(b) claim: (1) falsity and (2) scienter. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002) (citing *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001)). "If a plaintiff fails to plead either the alleged misleading statements or scienter with particularity, the court must dismiss the complaint." *Carol Gamble Trust 86 v. E-Rex, Inc.*, 84 Fed.Appx. 975, 977 (9th Cir. 2004).

5

Thus, under both the PSLRA and Rule 9(b), a plaintiff must specify each statement alleged to have been misleading and the specific reason or reasons why such statement is misleading. *See* 15 U.S.C. § 78u-4(b)(1); Fed. R. Civ. P. 9(b). This is accomplished by identifying either (1) inconsistent contemporaneous statements; or (2) inconsistent contemporaneous information (such as an internal document) that was made by or available to the Defendants. *In re Splash Technology Holdings, Inc. Sec. Litig.*, 2000 WL 1727377, *13 (N.D. Cal. 1997); *see also Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004).

With respect to scienter, the PSLRA also requires that the plaintiff 'state with particularity facts giving rise to a strong inference that the defendant[s] acted with the required state of mind' for each alleged act or omission. 15 U.S.C. § 78u-4(b)(2). "Deliberate recklessness" is the required state of mind and will satisfy scienter if it "reflects some degree of intentional or conscious misconduct." *Nursing Home*, 380 F.3d at 1230 (citing *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999). A complaint will not survive if it just relies on generic allegations. *See Silicon Graphics,* 183 F.3d at 974, 985. To assess whether a plaintiff has sufficiently pled scienter, a court must consider "whether the total of plaintiff's allegations, even though individually lacking, are sufficient to create a strong inference that defendants acted with deliberate or conscious recklessness." *Nursing Home*, 380 F.3d at 1230. Additionally, a court must consider "all reasonable inferences, whether or not favorable to the plaintiff." *Id.* (citing *Gompper*, 298 F.3d at 897).

## **ANALYSIS**

The issue to be decided in this motion is whether plaintiff's three fraud-based claims for 1) common law fraud, 2) violation of the Florida Securities Investor Protection Act, Fla. Stat. § 517.01 et seq., and 3) violation of Securities Exchange Act of 1934, Section 10(b) and Rule 10b-5 all fail because as a matter of law, there is no misrepresentation or omission of a material fact alleged in the FAC.

In Florida, the elements of a claim for common-law fraud are: (1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party." *Lance v. Wade*, 457 So.2d 1008, 1011

(1984).

The elements of a claim under Rule 10b-5 and the elements of a claim the Florida Securities Investor Protection Act, Fla. Stat. § 517.01 et seq. ("FSIPA") are similar. To state a cause of action under Section 517.301, a party must allege and prove: (1) a misrepresentation or omission of a material fact; (2) that the investor justifiably relied on said misrepresentation or omission; (3) that the misrepresentation or omission was made in connection with a purchase or sale of securities; (4) with scienter or reckless disregard as to the truth of the communication; and (5) that the untruth was the direct proximate cause of the investor's actual loss. *First Union Brokerage v. Milos*, 717 F.Supp. 1519, 1523 (S.D. Fla.1989), *aff'd*, 997 F.2d 835 (11th Cir.1993). The primary differences concerning the Florida statute are that scienter is satisfied by showing a showing of mere negligence, rather than reckless disregard, and that a plaintiff must plead justifiable reliance. *Profilet v. Cambridge Financial Corp.*, 231 B.R. 373, 381 (S.D. Fla.1999).

All three causes of action require the presence of a common element: a false statement (or misrepresentation or omission) concerning a material fact. All three of Plaintiff's fraud-based claims are premised on the sole allegation that the non-disclosure of the "true budget projections" found in Exhibit C constituted an omission of material fact. FAC, ¶ 123. For Plaintiff's claims to be actionable, the undisclosed projections must demonstrate the falsity of representations that were made to the Plaintiff in the PPM.

In essence, Plaintiff's three fraud-based causes of action boil down to a single claim: that Plaintiff was induced to make the loan to GMICC based on Defendants' statement in the PPM that when GMICC obtained the OPIC loan, it would have sufficient cash to repay the Note by the end of 2004, and that, based on the budget projections found in Exhibit C, this statement was false, and known to be false by Defendants at the time they made it . *Id.*, ¶¶ 28-30. Plaintiff's evidence for its argument is that the budget projections at Exhibit C indicate "Cash Available" at year's end in the amount of $318,371 for the $500,000 projection and $281,421 for the $750,000 projection, and therefore Defendants, contrary to their representations in the PPM, would not have had sufficient cash available to repay the Note when

it became due in December 2004 even if GMICC obtained the OPIC loan.[1]

What Plaintiff inexplicably fails to acknowledge, however, is that the $318,371 and $281,421 amounts in Exhibit C represent GMICC's projected cash surplus *after repayment of Plaintiff's Note*. The $500,000 projection shows, in the January 2004 column, cash from "Debt" (Plaintiff's loan) of $500,000. In June 2004 Defendants project additional cash being received as they receive equity investments totaling $12.5 million from the OPIC loan, and allotting the entity $335,000 in management fees. However*, at this point Defendants project payoff of the entire loan from Plaintiff*. This can clearly be seen from the negative entry ($500,000) in the "Debt" row for cash, which corresponds to the $500,000 proceeds from Plaintiff in January. Cash, rather than being increased by proceeds from the Plaintiff as it is in January, is being decreased by the payoff of the Note in June. In addition to projecting payoff of the principal amount of the loan from Plaintiff, Defendants also project payment of $22,687 in interest to Plaintiff, which is based on the 10% rate in the Note, for the approximately five months that the loan is projected to be outstanding. The $750,000 projection is based on very similar assumptions, and also shows that the loan from Plaintiff is projected to be paid off in June 2004. The $318,371 and $281,421 amounts represent total cash remaining *after Plaintiff's loan is repaid*.

The budget projections at Exhibit C, the centerpiece of Plaintiff's fraud claims, thus demonstrate that Defendants fully intended to pay back the Note, plus interest. All of Plaintiff's fraud-based claims, based as they are solely on the non-disclosure of the budget projections at Exhibit C, therefore must fail. Absent any false statement or misrepresentation of material fact, Plaintiff's claims for 1) common law fraud, 2) violation of the Florida Securities Investor Protection Act, Fla. Stat. § 517.01 et seq., and 3) violation of Securities Exchange Act of 1934, Section 10(b) and Rule 10b-5 all fail as a matter of law.

---

[1] It is interesting to note that, according to Plaintiff's allegations, even if the purportedly false statements had in fact been true, Plaintiffs still would have incurred the loss of its investment in GMICC. The actual cause of the loss was GMICC's failure to obtain the OPIC loan - an eventuality of which Plaintiff was fully aware when it made its investment. The cause of the loss was *not* the basis of purported misrepresentations themselves. Thus, this case presents the unusual situation where, even though the elements of the causes of action might be technically fulfilled, those elements are not themselves the cause of Plaintiff's loss. While this might present separate grounds for dismissal, as Defendants have not proffered these grounds the Court need not consider them.

## **CONCLUSION**

IT IS HEREBY ORDERED THAT Defendants' Motion to Dismiss Counts I, II and III of Plaintiff's First Amended Complaint [Docket No. 21] is GRANTED WITH LEAVE TO AMEND. Plaintiffs are hereby granted leave to filed an amended complaint no later than twenty (20) days of the filing date of the Court's Order **only if** they can allege, in good faith, an adequate factual basis for their allegations and can allege specific facts supporting all of the required elements of their causes of action with respect to each named defendant.

IT IS FURTHER ORDERED THAT Defendants shall respond to any amended complaint **within twenty-five (25) days** after it is filed.

IT IS SO ORDERED.

Dated: 4/5/07

SAUNDRA BROWN ARMSTRONG

United States District Judge