United States District Court
For the Northern District of California

1

2                    IN THE UNITED STATES DISTRICT COURT

3                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5

6

7  GIA-GMI, LLC, a Florida Limited Liability          No. C 06-7949 SBA
   Company,
8                                                     **ORDER**
                        Plaintiff,
9  v.                                                 [Docket Nos. 41 & 43]

10 DANIEL R. MICHENER, an individual,
   JAMES M. MCWALTERS, an individual,
11 CHARLES D. TOY, an individual, ALLAN
   M. DUNN, an individual, LARRY J.
12 AUSTIN, an individual, W. DENMAN VAN
   NESS, an individual, MICHAEL P.
13 SALUCCI, an individual, COMPUTER AND
   SOFTWARE ENTERPRISES, INC., a
14 California corporation, PANGAEA
   HOLDINGS, LLC, a dissolved Delaware
15 limited liability company, and PANGAEA
   TRADING CORPORATION, a Delaware
16 corporation

17         Defendants.

18 _____

19         This matter comes before the Court on counterclaim defendant J. Richard Blankenship's Motion

20 to Dismiss the First Amended Counterclaim  [Docket No. 43] and Motion to Strike Allegations from

21 the Amended Counterclaim [Docket No. 41].  Having read and considered the arguments presented by

22 the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution

23 without a hearing.  The Court hereby GRANTS Blankenship's Motion to Dismiss and DENIES AS

24 MOOT the Motion to Strike.

25                                   **BACKGROUND**

26         Plaintiff, GIA-GMI, LLC initiated this action against defendants on December 29, 2006, alleging

27 claims for fraud, violations of Florida and Federal securities law, breach of fiduciary duty, and successor

28

liability, all related to a loan by GIA-GMI to GMI Capital Corporation ("GMICC"), a now defunct company. On March 30, 2007, certain of the defendants filed their First Amended Counterclaim ("FAC") against J. Richard Blankenship as an individual.

The Defendants asserting the Amended Counterclaim are the former officers and directors of GMICC. Blankenship is the managing member of GIA-GMI, the plaintiff in this action. Defendants' Amended Counterclaim asserts claims for Negligent Misrepresentation and Intentional Misrepresentation. Both claims are based on the same alleged representations made by Blankenship that he would cause GIA-GMI to convert the debt GMICC owed to GIA into an equity investment in GMICC, which he ultimately failed to do. FAC, ¶ 31-41.

Defendants allege that in January 2004, Blankenship sought to invest in GMICC. Michener Decl. ¶ 3. Blankenship ultimately invested $750,000 in GMICC through a Florida LLC he formed called GIA-GMI, LLC (the plaintiff in the underlying action) and his investment took the form of a promissory note convertible to shares in GMICC (the "Note"). *Id.*, ¶ 5.

However, as of September 2004, GMICC was greatly in need of additional cash and was making strenuous efforts to attract new investors. *Id.*, ¶ 34. A major obstacle to this goal was GMICC's liability to GIA-GMI, LLC on the Note. *Id.* Accordingly, defendants and counterclaim plaintiffs Dunn, Michener, Toy, Austin, Van Ness and Salucci discussed with Blankenship the possibility of GIA-GMI, LLC's exercising its rights under the Note to convert its debt into stock in GMICC. *Id.*

The crux of defendants' counterclaim is that on October 21, 2004, in reliance on Blankenship's representations that he would cause the debt to be converted to stock in GMICC, Mr. Van Ness deposited $10,000 into GMICC's bank account and Salucci deposited $25,000 into the same account; on October 29, 2004, Austin deposited $25,000 into a GMICC bank account; and on November 1, 2004, Mr. Dunn deposited $20,000 into that account as well. *Id.*, ¶ 50.

On October 27, 2004, Blankenship executed a written agreement by which he agreed that GIA-GMI, LLC would convert the principal amount of the Note of $750,000 into 1,609,118 shares of GMICC common stock. Blankenship, however, subsequently refused to convert the Note to stock as promised, explaining that he was unable to do so because of fiduciary obligations to the trusts and

2

1    pension and profit sharing plans from which he had taken the money he invested in GMICC. Defendants

2    assert that Blankenship, either willfully or negligently, falsely represented that he had authority to

3    convert the debt from GMICC into stock in the company, thereby rendering all of counterclaimants'

4    investments in GMICC worthless. *Id.*, ¶ 57.

5    ## LEGAL STANDARD

6    Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the

7    plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell*

8    *Atlantic Corp. v. Twombly*, 127 S.Ct. 1955,1960 (2007). For purposes of such a motion, the complaint

9    is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are

10   taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest & Jennings, Inc. v. American*

11   *Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994).  All reasonable inferences are to be drawn in favor

12   of the plaintiff.  *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

13   The court does not accept as true unreasonable inferences or conclusory legal allegations cast

14   in the form of factual allegations.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981);

15   *see Miranda v. Clark County, Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002) ("[C]onclusory allegations of

16   law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim.");

17   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 987 ("Nor is the court required to accept as true

18   allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."),

19   *as amended by*, 275 F.3d 1187 (9th Cir. 2001).

20   ## ANALYSIS

21   ## I.    Motion to Dismiss

22   Blankenship's motion to dismiss asserts four separate bases for dismissal: (1) that he is not an

23   "opposing party" for purposes of Federal Rule of Civil Procedure Rule 13, and therefore a counterclaim

24   cannot be asserted against him and defendants must instead file a separate lawsuit; (2) that he is not

25   subject to personal jurisdiction in California and that venue is not proper in this court; (3) that the

26   negligent misrepresentation claim fails as a matter of law; and (4) that the intentional misrepresentation

27   claim is not alleged with the requisite particularity required by Federal Rule of Civil Procedure 9(b). The

28

United States District Court
For the Northern District of California

1   Court has determined that the motion to dismiss should be granted because Blankenship is not an

2   "opposing party" within the meaning of Rule 13, and Blankenship's argument is analyzed as follows.

3          Blankenship argues that the FAC must be dismissed because he is not an "opposing party" in

4   this action as is required for the assertion of a counterclaim under Rule 13. Rule 13(a), addressing

5   compulsory counterclaims, provides that a pleading "shall state as a counterclaim any claim which ...

6   the pleader has against any *opposing party*" (emphasis added). Similarly, Rule 13(b), addressing

7   permissive counterclaims, provides that a pleading "may state as a counterclaim any claim against an

8   *opposing party* ..." (emphasis added). Thus, Rule 13 provides that a counterclaim may be asserted only

9   against an "opposing party." *Id.*

10          This action was brought by plaintiff GIA-GMI, LLC, a Florida limited liability company. While

11   Blankenship is the managing member of GIA-GMI, he is not a named plaintiff in this action. Defendants

12   and counterclaim plaintiffs argue that Blankenship, as the managing member of GIA-GMI, is "so closely

13   identified" with GIA-GMI that he is "functionally identical" to it, and therefore qualifies as an "opposing

14   party" under Rule 13(a), citing *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*,

15   292 F.3d 384, 390 (3d Cir. 2002).

16          In *Transamerica*, the defendant was sued by two plaintiff entities in Texas, and, rather than filing

17   counterclaims against two other entities affiliated with the plaintiffs in Texas, the defendant filed a

18   separate suit against them in New Jersey. The district court in New Jersey, however, dismissed the

19   second action, ruling that the defendant's claims were barred because they were not asserted as

20   mandatory counterclaims in the Texas case. On appeal, the Third Circuit affirmed, holding that "where

21   parties are functionally equivalent as in [*Avemco Insurance Co. v. Cessna Aircraft Co.*, 11 F.3d 998

22   (10th Cir. 1993)], where an unnamed party controlled the litigation, or where, as in [*Banco Nacional*

23   *de Cuba v. First Nat'l City Bank*, 478 F.2d 191, 192 (2d Cir. 1973)], an unnamed party was the alter ego

24   of the named party, they should be treated as opposing parties within the meaning of Rule 13." *Id.* at

25   391. The court held that an assignee of the contractual rights that were the basis of litigation and who

26   in fact instituted the litigation on behalf of the assignors was the functional equivalent of the assignors.

27   *Id.* at 392 ("Thus, by virtue of the assignment, the rights that are at stake in the Texas litigation are

28

1    actually [the assignee's] rights, not [the assignors], and this is the reason why [the assignee] is

2    conducting the litigation in the Texas action.").

3         As an initial matter, assuming the Third Circuit's analysis in *Transamerica* is correct, defendants

4    provide absolutely no argument that Blankenship is in fact "functionally equivalent" to GIA-GMI. They

5    do not assert, as was the case with the plaintiffs in *Transamerica*, that Blankenship is an "assignee of

6    the contractual rights that were the basis of litigation" or that he "in fact instituted the litigation on

7    behalf of the assignors." Nor do they (nor the Third Circuit in *Transamerica*) provide any definition of

8    "functional equivalence." However, in *Banco Nacional*, cited by the Third Circuit in connection with

9    its "functional equivalence" language, the Second Circuit treated a party not named in the litigation as

10   an opposing party after concluding that the parties were "one and the same for the purposes of th[e]

11   litigation." 478 F.2d at 193 n. 1. The Court held that because the parties "acted as a single entity" and

12   because one was the alter ego of the other, both were "opposing parties" within the meaning of Rule 13.

13   *Id.*

14        While the facts alleged in the FAC demonstrate that Blankenship was closely involved with

15   GIA-GMI, there is no allegation in the FAC that Blankenship is  "one and the same for the purposes of

16   this litigation," controls this litigation on behalf of  GIA-GMI, or is the alter ego of  GIA-GMI. Thus,

17   neither *Transamerica* nor *Banco Nacional* support defendants' argument that Blankenship is the

18   functional equivalent of GIA, even under the broad reading of "opposing party" espoused by those

19   courts.

20        The Ninth Circuit has not yet directly interpreted the scope of Rule 13's "opposing party"

21   language. However, in *Noel v. Hall*  341 F.3d 1148, 1170 -1171 (9th Cir. 2003), a case involving

22   Washington state law, the Ninth Circuit noted that Washington courts have adopted a strict reading of

23   Rule 13(a)'s requirement that a pleader must bring compulsory counterclaims against "any opposing

24   party." In *Nancy's Product, Inc. v. Fred Meyer, Inc.*, 61 Wash. App. 645 (1991), the Washington appeals

25   court held that an opposing party for purposes Rule13(a) is "one who asserts a claim against the

26   prospective counterclaimant in the first instance," i.e., a named plaintiff. *Id.* at 650 ("Words contained

27   in court rules which are not therein defined should, like statutory terms, be given their ordinary meaning

28

**United States District Court**
For the Northern District of California

. . . To interpret the term 'opposing party' in the context of the court rules so as to include a nonparty with an adverse interest is a non sequitur."). The Ninth Circuit held that the defendant in the counterclaim in the case before it was "not a plaintiff--and thus not an opposing party" in the underlying action and therefore the claims against him were not compulsory counterclaims. *Noel*, 341 F.3d at1170 -1171; *see also* William W Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial § 8:262 (2007) (defining "opposing party" as "any party who has *previously asserted a claim against the counterclaimant*"(emphasis in original)).

Whatever flaws Rule 13 may have, it at least has the virtue of clarity. The plain meaning of "opposing party" is a *party* to the lawsuit -- that is, a named party who asserted a claim against the counterclaimants. To accept the expansive definition of this term espoused by defendants would erode the Rule's clarity to the point that litigants would simply have to guess  in each individual case whether a court would determine that a potential defendant to a counterclaim is an "opposing party." While other Circuits have carved exceptions to this plain meaning in instances where there was no question that the counterclaim defendant was in all salient legal respects identical to a named party, such is not the case here. As noted above, defendants have not presented any argument that Blankenship is actually  "one and the same" as GIA-GMI, controls this litigation on behalf of  GIA-GMI, or is the alter ego of  GIA-GMI, and therefore these exceptions do not apply.

Finally, defendants, all but conceding that Blankenship is not an "opposing party" within the meaning of Rule 13, argue that dismissal under Rule 13 "gives nothing to either side; nor does it assist the court." Opp. at 9. Defendants admit that, if their counterclaim is dismissed, they are free to file their claims against Blankenship as a separate lawsuit, and that such a lawsuit would likely be consolidated with this case. Therefore, they argue, "dismissal under FRCP 13 would require counterclaimants to jump through a procedural hoop for no meaningful reason." *Id.*

Be that as it may, the Court is not free to extricate defendants from the obligation to jump through "procedural hoops" prescribed by the Federal Rules simply because they make bringing claims slightly more burdensome. Indeed, a primary Purpose of the Federal Rules is to reduce litigation. *See, e.g., Dill Mfg. Co. v. Acme Air Appliance Co.*,  2 F.R.D. 151, 153 (E.D.N.Y. 1941) (purpose of Federal

**United States District Court**
For the Northern District of California

Rules of Civil Procedure is to reduce the amount of litigation, to narrow the issues, to avoid surprises, and to promote justice). Accordingly, the First Amended Counterclaim should be dismissed.

## II.      Motion to Strike

In his Motion to Strike, Blankenship moves the Court to strike paragraph 12 from the Amended Counterclaim as "obviously contentious," "inflammatory," and irrelevant.[1] As the Court grants the motion to dismiss on the grounds that Blankenship is not an "opposing party" for the purposes of Rule 13, the motion to Strike is denied as moot.

### CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT Blankenships' Motion to Dismiss the First Amended Counterclaim [Docket No. 43] is GRANTED. Blankenships' Motion to Strike Allegations from the Amended Counterclaim [Docket No. 41] is DENIED AS MOOT.

IT IS SO ORDERED.


Dated: 6/6/07                                 SAUNDRA BROWN ARMSTRONG

United States District Judge

---

[1] Paragraph 12 of the Amended Counterclaim states: "12. A former investment banker, Blankenship also served as the U.S. Ambassador to the Bahamas from 2001 to 2003, having been appointed to this position by President Bush following the Bush-Gore election contest. News reports had stated that Blankenship and Republican cronies had raised hundreds of thousands of dollars for the Bush campaign, during which Blankenship's private jet had been made available to Florida Governor Jeb Bush."